UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NERI TAWFIQ,

               Plaintiff,

v.

CHRISTOPHER CAULEY,

               Defendant.

_____/

Case No. 22-cv-10245

Paul D. Borman
United States District Judge

Patricia T. Morris
United States Magistrate Judge

## OPINION AND ORDER
## (1) REJECTING MAGISTRATE JUDGE PATRICIA T. MORRIS'S AUGUST 15, 2022 REPORT AND RECOMMENDATION (ECF NO. 13);
## (2) OVERRULING PLAINTIFF'S OBJECTIONS (ECF NO. 14);
## (3) SUSTAINING DEFENDANT'S OBJECTIONS (ECF NO. 15);
## (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 6); AND
## (5) DISMISSING THIS CASE WITHOUT PREJUDICE

On August 15, 2022, Magistrate Judge Patricia T. Morris issued a Report and Recommendation to deny Defendant Christopher Cauley's Motion for Summary Judgment and to remand the matter to the Saginaw County Circuit Court. (ECF No. 13, Report and Recommendation.) Plaintiff Neri Tawfiq filed an Objection to the Report and Recommendation on August 22, 2022 (ECF No. 14), and Defendant Christopher Cauley filed an Objection to the Report and Recommendation on August 29, 2022 (ECF No. 15). Plaintiff filed a request for a hearing before the Court on September 12, 2022. (ECF No. 16.)

The Court, having conducted *de novo* review under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) of those portions of the Report and Recommendation to which specific and timely objections have been filed, REJECTS the Magistrate Judge's Report and Recommendation, OVERRULES Plaintiff's Objections, SUSTAINS Defendant's Objections, GRANTS Defendant's Motion for Summary Judgment, and DISMISSES this case WITHOUT PREJUDICE.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Neri Tawfiq is a current patient of the United States Department of Veterans Affairs (VA), and he was also employed as a staff pharmacist at the Saginaw VA Medical Center from November 22, 2020 to March 23, 2021. (ECF No. 1, Stertzbach Decl. ¶ 5, PageID.5.) (ECF No. 6-2, PPO, PageID.55.) The VA terminated Tawfiq's employment on March 23, 2021 "due to conduct" during his probationary period, based on the recommendation of the Chief of Pharmacy, Teresa Defresne. (ECF No. 6-3, Termination Letter, PageID.73-75.) Defendant Christopher Cauley, at that time the Medical Center Director of the Saginaw VA Hospital, signed the termination letter, which provided Tawfiq with specific instructions on the proper channels for challenging his termination, such as filing a claim with the

EEOC, appealing to the Merit Systems Protection Board, or submitting a complaint to the Office of Special Counsel. (*Id.*)[1]

On the same day of his termination, Tawfiq returned to the VA to discuss his termination with his supervisor. (ECF No. 6-5, VA Police Report, PageID.81-83.) According to Cauley, Tawfiq had an "outburst" when he returned to the medical center, which included "banging on the door of the pharmacy office" and demanding to speak with his "former supervisors," and this conduct was reported to the VA police and to the VA's Disruptive Behavior Committee. (*Id.*) Some members of the pharmacy staff reported that they felt their "personal safety" was threatened during the incident. (*Id.*)

On March 31, 2021, Saginaw VA Medical Center's Disruptive Behavior Committee (DBC) reviewed Tawfiq's March 23rd behavior and determined that he posed a risk to patient and staff safety when visiting VA medical facilities as a patient. (ECF No. 6-4, DBC Letter, PageID.77-79.) On April 1, 2021, the Committee placed a Category I Behavioral Patient Record Flag on Tawfiq's file and mailed Tawfiq a letter notifying him of the patient flag that same day. (*Id.*) The "Patient Record Flag" requires Tawfiq to "check in with VA Police" whenever he arrives at

---

[1] On March 25, 2021, Tawfiq contacted an EEO counselor to complain about his termination, and he remains engaged in the EEO process. (ECF No. 6-6, EEO Partial Accept. Ltr.) (ECF No. 6-7, EEO Hearing Ltr.)

a VA facility, and after checking in, VA police are required to "escort[]" Plaintiff to and from his appointments. (*Id.*)

Days later, Tawfiq arrived at the Ann Arbor VA Medical Center for a medical appointment, and he alleges that, while waiting for his appointment, four VA police officers "rushed towards" him, and two of those officers aimed their firearms at him. (ECF No. 1, PPO Pet., PageID.55-56.) One of Tawfiq's medical "providers" intervened and escorted him to a "veteran patient advocate," who explained to Tawfiq that Cauley and the DBC at the Saginaw VA Medical Center placed a flag on Tawfiq's patient record. (*Id.*) On April 8, 2021, Tawfiq appealed the VA's Patient Record Flag to Cauley and Saginaw Medical Center's Chief of Staff, James Hines, M.D. (ECF No. 6-8, Appeal Ltr.)

In June 2021, Tawfiq was at his apartment in Saginaw on a phone call with a physician when two officers arrived at his apartment. (ECF No. 1, PPO Pet., PageID.58, 67-68.) An employee of the VA had called the Saginaw Police and requested that they check on Tawfiq, telling the dispatcher that Tawfiq had a history of "suicidal ideations" and that Tawfiq was known to carry a pistol, knife, and body armor. (*Id.*) The caller also mentioned that Tawfiq had been terminated from the VA and had since made "vague threats" against the director of the VA. (*Id.*)

The police officers knocked on Tawfiq's door, and Tawfiq opened the door just wide enough for the officers to see Tawfiq's face and left arm. (*Id.*) Tawfiq

4

refused to properly identify himself (eventually providing a false name), and then attempted to shut the door on the officers, but one of the officers was already "in the threshold of the door" and caught the door and pushed it back open. (*Id.*) Tawfiq then grabbed the officer by his arm and "balled his left fist up" as though he were preparing to strike the officer. (*Id.*) But before he could land a hit, the officer pulled his taser and instructed Tawfiq to step back, and the officers then handcuffed Tawfiq and transported him to the Saginaw County Jail. (*Id.*)

On January 18, 2022, Tawfiq filed an application for a personal protective order (PPO) against Christopher Cauley in the Saginaw County Circuit Court. (ECF No. 6-2, PPO, PageID.51.)[2] Tawfiq alleges that Cauley was involved in Tawfiq's termination in March of 2021 and in placing a behavioral flag on his record, which led to the VA police confronting Tawfiq at a medical visit in the VA in April of 2021. (*Id.* PageID.55-57.) Tawfiq's PPO application alleges that Cauley "stalked" him, as defined by the Michigan penal code, and requests that the court prohibit Cauley from: (1) "appearing at [his] workplace or residence;" (2) "entering onto or

---

[2] Tawfiq has filed seven additional lawsuits against Cauley and other VA employees allegedly involved in his termination and the placement of the behavioral flag on Tawfiq's patient record. *See Tawfiq v. Dufresne*, Case No. 21-cv-10976 (dismissed on December 21, 2021); *Tawfiq v. Johnson*, Case No. 22-cv-10163 (dismissed on January 28, 2022); *Tawfiq v. Dufresne*, Case No. 22-cv-10164; *Tawfiq v. Hines*, Case No. 22-cv-10175; *Tawfiq v. Cauley*, Case No. 22-cv-10176; *Tawfiq v. Hines*, Case No. 22-cv-10328; and *Tawfiq v. McDonough*, Case No. 22-cv-10928.

remaining on property owned, leased, or occupied by [Tawfiq];" (3) "threatening to kill or physically harm [Tawfiq];" (4) "purchasing or possessing a firearm;" and (5) "posting a message through the use of any medium of communication, including the internet or a computer or any electronic medium, pursuant to MCL 750.411s." (*Id.* PageID.51.)

The Saginaw County Circuit Court denied Tawfiq's PPO application, and Tawfiq moved for a hearing. (*Id.* PageID.50.) However, two days before the scheduled hearing,  Cauley removed the action to this Court pursuant to 28 U.S.C. § 1442(a)(1). (ECF No. 1, Notice of Removal.) This case was referred to Magistrate Judge Patricia T. Morris for all pretrial proceedings. (ECF No. 2.)

On April 11, 2022, Defendant Christopher Cauley moved for summary judgment, arguing that because the PPO would inhibit his official duties, the suit was effectively one against the United States, which is protected by sovereign immunity. (ECF No. 6, Def.'s Mot. S.J.)

The Court ordered Tawfiq to file a response brief by May 2, 2022. (ECF No. 7.) Tawfiq, however, did not do so, and instead filed a request for a hearing before the Court, stating that he "feel[s] that [he] is being decimated against by Zak Toomey and the United States District Court of Michigan," and that "Mr. Toomey added information into the lawsuits which, [Tawfiq] did not add at all," and "changed

[Tawfiq's] entire lawsuit in order to protect the Defendant." (ECF Nos. 8, 10.) Tawfiq did not otherwise elaborate on this statement.

On August 15, 2022, Magistrate Judge Patricia T. Morris issued a Report and Recommendation (R&R), recommending that Defendant's motion for summary judgment be denied and that this case be remanded to the Saginaw County Circuit Court. (ECF No. 13, R&R.) Magistrate Judge Morris concluded that Tawfiq's requested PPO would not affect Cauley's ability to perform his official duties and thus the PPO is not a de facto lawsuit against the United States that would be barred by sovereign immunity. The Magistrate Judge further suggested that the Court therefore lacks subject matter jurisdiction and recommended that the matter be remanded to the state court.

On August 22, 2022, Plaintiff Tawfiq filed an "Objection" to the R&R, titled "Plaintiff Response to the Case." (ECF No. 14, Pl.'s Obj.) Tawfiq complains of "ongoing life threatening Harassment from Veteran Affairs Facilities due to the false Category-1 Reg Flag for violence and threat that was placed on plaintiff['s] medical record." (*Id.* PageID.142.) Tawfiq attaches 40 pages of documents, some with handwritten notations on them, and he labels each individual page as a separate "objection," as Objection Nos. 1 through 40. (*Id.* PageID.144-83.)

On August 29, 2022, Defendant Cauley filed his Objection to the R&R, stating five objections. (ECF No. 15, Def.'s Obj.) Defendant contends that the R&R

contains numerous errors and that the Court should grant summary judgment in Defendant's favor because Plaintiff's claims are barred by sovereign immunity.

On September 12, 2022, Plaintiff filed a request for a hearing before the Court. (ECF No. 16.)

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court conducts a *de novo* review of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed "specific written objection" in a timely manner. *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate[ judge]'s report that the district court must specially consider." *Id*. (quotation marks and citation omitted). "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). "'[B]are disagreement with the conclusions reached by the Magistrate Judge, without any effort to identify

8

any specific errors in the Magistrate Judge's analysis that, if corrected, might warrant a different outcome, is tantamount to an outright failure to lodge objections to the R & R.'" *Arroyo v. Comm'r of Soc. Sec.*, No. 14-cv-14358, 2016 WL 424939, at *3 (E.D. Mich. Feb. 4, 2016) (quoting *Depweg v. Comm'r of Soc. Sec.*, No. 14-11705, 2015 WL 5014361, at *1 (E.D. Mich. Aug. 24, 2015) (citing *Howard v. Sec'y of Health & Human Serv.*, 932 F.2d 505, 509 (6th Cir. 1991)).

## III.  ANALYSIS

### A.    Plaintiff's Objection (ECF No. 14)

On August 22, 2022, Plaintiff Tawfiq filed an "Objection" to the R&R, titled "Plaintiff Response to the Case." (ECF No. 14, Pl.'s Obj., PageID.142.) In the "Objection," Tawfiq merely makes statements in a conclusory fashion without any explanation as to how the Report and Recommendation's findings are erroneous. He fails to identify any alleged error on the Magistrate Judge's part, and instead complains of dealing with "ongoing life threatening Harassment from Veteran Affairs Facilities due to the false Category-1 Red Flag for violence and threat that was place on [his] medical record," causing him to lose his apartment, and worsening his mental and physical conditions. (*Id.* PageID.142-43.)

Tawfiq lists eight numbered general "Undisputed-Facts," such as "Plaintiff date of termination," and "Date of Violent behavior occurred…," and complains that "Mr. Zak Toomey [Defendant's counsel], is taking out the essential information of

my cases, so the Judge will not be aware of important facts to the case at hand." (*Id.*) However, Tawfiq does not further elaborate on that statement. (*Id.*)

Tawfiq then attaches 40 pages of documents, with each individual page numbered Objection numbers 1 through 40. (*Id.* PageID.144-83.) These documents are not objections, and they do not provide any basis on which to conclude that the Magistrate Judge committed error in the Report and Recommendation.

It is settled law that "[t]he filing of vague, general, or conclusory objections [to a report and recommendation] does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Zimmerman v. Cason*, 354 F. App'x 228, 230 (6th Cir. 2009) (quoting *Cole v. Yukins*, 7 F. App'x 354, 356 (6thCir. 2001) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). Indeed, such objections are considered "waived." *Fields v. Lapeer 71-A Dist. Court Clerk*, 2 F. App'x 481, 482-83 (6th Cir. 2001) ("We conclude that Fields has waived any challenge to the district court's decision. Although Fields filed objections to the magistrate judge's report, the objections were conclusory and did not specifically address how the report's factual and legal recommendations were incorrect"). The Sixth Circuit has "explained the rationale behind this rule" as follows:

> A general objection to the entirety of the magistrate[ judge]'s report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate [judge] useless. The functions of the district court are effectively duplicated as both the

> magistrate [judge] and the district court perform identical tasks. The duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.

*Zimmerman*, 354 F. App'x at 230 (quoting *Howard*, 932 F.2d at 509). *See also Aldrich*, 327 F. Supp. 2d at 747 (overruling objections to report and recommendation and explaining that "an 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term, is used in this context").

Here, Tawfiq's objections make no meaningful effort to demonstrate any specific error in the Magistrate Judge's substantive analysis that, if corrected, might warrant a different outcome. Tawfiq's objections therefore are insufficient as a matter of law and are OVERRULED.

## B.    Defendant's Objections (ECF No. 15)

Defendant  Cauley raises five objections to Magistrate Judge Morris's Report and Recommendation: (1) the R&R incorrectly characterizes Tawfiq's requested relief in the PPO; (2) the R&R mischaracterizes the substance of Tawfiq's PPO; (3) the R&R incorrectly applies controlling precedent; (4) the R&R contains no other support for its narrow interpretation of sovereign immunity; and (5) the R&R improperly recommends remand. (ECF No. 15, Def's Obj.) The first four objections relate to the Magistrate Judge's conclusion that Tawfiq's claims against Cauley are

not barred by sovereign immunity, and the last claim relates to the recommendation that this matter be remanded to the state court.

### 1. Plaintiff's Claims are Barred by Sovereign Immunity (Objection Nos. 1 through 4)

The United States, as sovereign, is immune from suit unless it consents to be sued, and the terms of its consent define a court's jurisdiction to entertain the suit. *United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued.") Sovereign immunity extends to federal officials sued in their official capacity. *Muniz-Muniz v. United States Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013) ("[T]he United States may not be sued without its consent.... Sovereign immunity extends to agencies of the United States or federal officers [acting] in their official capacities.") (internal quotation marks omitted).

If the suit against the federal official, in his or her official capacity, is, in effect, a suit against the sovereign, then the claim is barred by sovereign immunity. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949). However, federal officials may be held personally liable for their wrongful actions, despite being an "instrumentality of the sovereign." *See id.* "If the official purports to act as an individual and not as an official, a suit directed against that action is not

a suit against the sovereign," and the claim against the official is not barred by sovereign immunity. *See id.* at 689.

Magistrate Judge Morris concluded in her R&R that "Tawfiq's requested PPO would not affect Cauley's ability to perform his official duties, [and] the PPO application would not 'require action by the sovereign or disturb the sovereign's property[,]'" and that "[t]he PPO, therefore, is not a de facto lawsuit against the United States, and it is not barred by sovereign immunity." (ECF No. 13, R&R, PageID.134.)

Defendant Cauley asserts in his Objection that the Magistrate Judge's R&R contains numerous factual and legal errors, and he requests that the Court overrule the R&R and grant summary judgment in his favor. (ECF No. 15, Def.'s Obj.)

Defendant's first four objections relate to the Magistrate Judge's conclusion in the R&R that Tawfiq's claims against Cauley are not barred by sovereign immunity. Specifically, Defendant contends, in his first two objections to the R&R, that the Magistrate Judge incorrectly characterized Tawfiq's requested relief in the petition for PPO, and mischaracterized the substance of that PPO petition. (*Id.* PageID.189-96.) Defendant argues in his third and fourth objections that the Magistrate Judge's R&R incorrectly applies controlling authority when determining whether a suit against a federal official is barred by the government's sovereign immunity, and that Tawfiq's claims in his petition are barred by the United States's

13

sovereign immunity. (*Id.* PageID.196-206.) The Court, on *de novo* review, agrees with Defendant and finds that Defendant's objections should be sustained.

When describing Tawfiq's requested relief in his PPO, the Magistrate Judge stated that:

> Tawfiq requests that the court prohibit Cauley from (1) "appearing at [his] workplace or residence"; (2) entering onto or remaining on property owned, leased, or occupied by [him]"; (3) threatening to kill or physically injure [him]"; or (4) "purchasing or possessing a firearm."

(ECF No. 13, R&R, PageID.124, 132.) The Magistrate Judge concluded that, based on this limited range of requested relief, Tawfiq's claims are not barred by sovereign immunity, stating: "This injunctive relief would affect Cauley personally, and it would not inhibit his ability to perform his official duties." (*Id.* PageID.132-33.) The Magistrate Judge states that "Tawfiq's PPO request explicitly allows Cauley to approach Tawfiq "in a public place" and to contact Tawfiq by phone or email," and that "none [of the requested relief]… would affect Cauley's ability to enforce the patient flag." (*Id.* PageID.133)

However, as Defendant correctly states in his Objection, the R&R does not accurately reflect the complete relief sought by Tawfiq in his petition. (ECF No. 15, Def.'s Obj., PageID.189-96.) Cauley asserts that Tawfiq's petition reflects that he requested broader relief than the R&R acknowledges. Specifically, Cauley argues that the R&R omits "the most obviously relevant form of relief Tawfiq requested:

prohibiting Director Cauley from 'posting a message through the use of any medium of communication, including the internet or a computer or any electronic medium, [pursuant to MCL 750.411s].'" (*Id.* PageID.191, citing ECF No. 6-2, PPO Pet., PageID.51.)[3] Cauley argues that this form of relief "would necessarily prohibit Director Cauley from enforcing the behavioral flag on Tawfiq's record by, for instance, electronically notifying VA security of the flag or notifying Tawfiq's healthcare providers of the flag, which is the principal way in which the behavioral flag is transmitted within the VA." (*Id.*, citing ECF No. 6-4, Behavioral Flag, PageID.77 ("it is determined that an alert known as a Category I Behavioral Patient

---

[3] Mich. Comp. Laws 750.411s provides, in relevant part:

> (1) A person shall not post a message through the use of any medium of communication, including the internet or a computer, computer program, computer system, or computer network, or other electronic medium of communication, without the victim's consent, if all of the following apply:
>   (a) The person knows or has reason to know that posting the message could cause 2 or more separate noncontinuous acts of unconsented contact with the victim.
>   (b) Posting the message is intended to cause conduct that would make the victim feel terrorized, frightened, intimidated, threatened, harassed, or molested.
>   (c) Conduct arising from posting the message would cause a reasonable person to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested.
>   (d) Conduct arising from posting the message causes the victim to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

Record Flag will be activated on your computerized medical record to alert staff…."").) Cauley further argues that this requested relief would also "prevent Director Cauley from using electronic means to report new instances of Tawfiq's threats, harassment, and other misconduct," and thus "necessarily prohibit Director Cauley from carrying out his federal duties related to enforcing the behavioral flag." (*Id.*) The Magistrate Judge's R&R fails to mention, much less address, this requested relief.

Defendant Cauley further contends that Tawfiq's state court petition contains five pages of handwritten allegations, "all of which are directed at conduct which Director Cauley took within the scope of his federal duties." (ECF No. 15, Def.'s Obj., PageID.192.) Cauley argues that a review of the "substance of Tawfiq's complaint demonstrates that Tawfiq is seeking an injunction to prevent Director Cauley from performing his federal duties." (*Id.* citing ECF No. 6-2, Petition, PageID.55-59; and ECF No. 1, Stertzbach Decl., PageID.5 (confirming that all of the allegations in Tawfiq's petition arise from Director Cauley's federal duties).)

Specifically, Tawfiq first complains in the petition that the VA terminated his employment "without any reason why." (ECF No. 6-2, PPO Pet., PageID.55.) Defendant Cauley authorized Tawfiq's termination via the March 23, 2021 Termination Letter, which he executed in his official capacity as the "Acting Medical Center Director," not his personal capacity. (ECF No. 6-3, Termination Ltr.,

PageID.73-75.) Tawfiq then primarily complains about the VA's behavioral flag placed on his patient record. (ECF No. 6-2, PPO Pet., PageID.55-58 (alleging that "Christopher Cauley[,] Medical Center Director at Aleda E. Lutz VA in Saginaw, MI along with DBS had this [behavioral flag] placed on my medical profile").) As Defendant correctly states, it is undisputed that Cauley's role in upholding the behavioral flag arises from his official, rather than his personal, duties.

Tawfiq also complains in his petition about local police performing a welfare check at his apartment. (ECF No. 6-2, PPO Pet., PageID.58.) However, the record shows that Cauley did not request that the police conduct a welfare check; a member of VA security, M. Baker, did. (ECF No. 6-2, PPO Pet. Officer Narrative, PageID.67-68.) Defendant further notes that the R&R correctly acknowledges that Cauley has never personally met or spoken with Tawfiq, and that Cauley's only involvement with Tawfiq is in his capacity as the Medical Center Director at the Saginaw VA Medical Center. (ECF No. 15, Def.'s Obj., PageID.189; ECF No. 13, R&R, PageID.120-24.)

Finally, Defendant points out that in Tawfiq's Objection to the Magistrate Judge's R&R, Tawfiq again focuses on the patient flag on his account, stating that his complaint against Cauley is directed at preventing "Harassment from Veteran Affairs Facilities due to the false Category-1 Red Flag for violence and threat that

was placed on plaintiff['s] medical record." (See ECF No. 14, Pl.'s Obj., PageID.142.)

The Court agrees with Defendant that the Magistrate Judge erred in characterizing Tawfiq's allegations and the requested relief in his PPO petition. It is true, as the R&R states, that Tawfiq's petition included requests that Cauley be prohibited from "threatening to kill or physically injure" Tawfiq and from "purchasing or possessing a firearm," and that these requests do not appear to inhibit Cauley from performing his official duties. However, there are no allegations that Tawfiq and Cauley ever had any personal relationship, or have ever even met or spoken to one another.

Importantly, the R&R wholly failed to recognize and address Tawfiq's request in his petition to prohibit Cauley from "posting a message through the use of any medium of communication, including the internet or a computer or any electronic medium, pursuant to MCL 750.411s." The R&R thus improperly concluded that Tawfiq's requested PPO would not affect Cauley's ability to perform his official duties. Defendant explains that the behavioral flag placed on Tawfiq's patient record is enforced by electronically notifying VA security and medical providers of the flag, and of any new instances of threats, harassment or other misconduct. It is the enforcement of this behavioral flag that Tawfiq complains he believes is harassing and threatening to him. The R&R states that "Tawfiq's complaint *mentions* the

patient flag." (ECF No. 13, R&R, PageID.133 (emphasis added).) However, Tawfiq's petition does more than "mention" the patient flag; Tawfiq devotes most of his five pages of handwritten notes complaining about the flag. Tawfiq then further complains about "ongoing life threatening Harassment from Veteran Affairs Facilities due to the false Category-1 Red Flag for violence and threat that was placed on [his] medical record" in his Objection to the R&R. (ECF No. 14, Pl.'s Obj., PageID.142.)

The Court further finds that the PPO petition's request that Cauley be prohibited from "entering onto or remaining on property … *occupied by* [Tawfiq]" could further affect Cauley's ability to perform his official duties, to the extent Tawfiq "occupied" a VA facility when seeking medical care, that is also "occupied" by Cauley, in his capacity of Director.

Thus, the Court agrees with Defendant that the R&R incorrectly characterized Tawfiq's allegations in his petition and the requested relief, and that the petition seeks to interfere with Defendant Cauley's official duties – primarily preventing Cauley from enforcing the behavioral flag on Tawfiq's patient record, and reporting any other incidents of threats or misconduct by Tawfiq on VA property or towards VA personnel.

Defendant next argues that the Magistrate Judge's R&R applies an improperly narrow and unsupported interpretation of the United States Supreme Court's

decision in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), to conclude that Tawfiq's suit against Cauley is not barred by the government's sovereign immunity. (ECF No. 15, Def.'s Obj., PageID.196-206.)

In the R&R, the Magistrate Judge stated that, to determine whether a suit which names an individual officer is actually a suit against the sovereign, "the focus of the inquiry is the relief sought, not the challenged action." (ECF No. 13, R&R, PagID.129, 131.) The Magistrate Judge stated that "[r]egardless of whether the defendant acted within the scope of his or her authority, the federal government is the actual defendant only where the plaintiff seeks a remedy that burdens the sovereign." (*Id.* PageID.131.) The Magistrate Judge then concluded that Tawfiq's requested relief "would affect Cauley personally," and "would not inhibit his ability to perform his official duties," and thus Cauley is not entitled to sovereign immunity. (*Id.* PageID.132-34.)

Defendant argues in its Objection that the Supreme Court in *Larson* expressly considered the alleged wrongful actions of the federal officer, as well as the relief requested, to determine whether a claim was barred by sovereign immunity. (ECF No. 15, Def.'s Obj., PageID.196-97, quoting *Larson*, 337 U.S. at 695, 703.) Defendant further contends that, since *Larson*, the Supreme Court has continued to uphold the principle that sovereign immunity bars suits for injunctive relief against government officials for actions that arise from the officer's official duties or if the

requested relief would interfere with the officer's federal duties. (*Id.* PageID.197-98, citing *Dugan v. Rank*, 372 U.S. 609, 622 (1963); *State of Hawaii v. Gordon*, 373 U.S. 57, 58 (1963); *Malone v. Bowdoin*, 369 U.S. 643, 648 (1962).) Defendant argues that neither *Larson*, nor the Supreme Court cases following *Larson*, prohibit courts from considering "the challenged action" when determining whether a suit for injunctive relief against a federal official would operate against the sovereign. (*Id.* PageID.199.) Defendant further argues that the Sixth Circuit Court of Appeals has interpreted *Larson* broadly and considered "the challenged action" and whether the official was acting within the scope of his or her federal duties, in addition to the relief requested, when determining whether a suit against the officials in their individual capacity for injunctive relief should be barred by sovereign immunity. (*Id.* PageID.200-01, citing *Granger v. Marek*, 583 F.2d 781, 782 (6th Cir. 1978); *Mandel v. Nouse*, 509 F.2d 1031, 1033 (6th Cir. 1975); *Andrews v. White*, 221 F.2d 790, 791 (6th Cir. 1955).)

As discussed above, this Court finds that the Magistrate Judge's characterization of the relief requested in Tawfiq's petition is inaccurate because the R&R fails to address the petition's request to prohibit Cauley from "posting a message through the use of any medium of communication, including the internet or a computer or any electronic medium, pursuant to MCL 750.411s," and mischaracterizes the substance of Tawfiq's petition, which is directed at Tawfiq's

21

termination and the behavioral flag placed on his record. Thus, a fair reading of Tawfiq's petition is that it seeks to prevent Cauley from carrying out his federal duties related to enforcing the behavioral flag on Tawfiq's record. That Tawfiq requests additional relief in his petition, including prohibiting Cauley from "threatening to kill or physically injure" him, or "purchasing or possessing a firearm," does not take away from the other relief he requests that does infringe on Cauley's ability to carry out his federal duties.

The R&R further notes that Tawfiq no longer works at the VA, so Cauley would not need to "personally enter Tawfiq's residence or workplace." (ECF No. 13, R&R, PageID.132.) However, as discussed above, the petition also seeks to prohibit Cauley from "entering onto or remaining on property… occupied by" Tawfiq, and as Tawfiq continues to seek medical care from the VA, the requested relief could infringe on Cauley's ability to carry out his federal duties if he were required to leave a VA facility that Tawfiq visits, or "occupie[s]," for medical care.

Therefore, whether the Court's inquiry focuses on the relief sought in Tawfiq's PPO petition, or the actions that arise from the official's federal duties, the Court finds that Tawfiq's claims are barred by the government's immunity. Tawfiq has no personal relationship with Cauley, and all of Cauley's alleged wrongful actions in connection with Tawfiq's termination and the enforcement of the behavioral flag were taken within the scope of Cauley's federal duties as Director of

22

the Saginaw VA facility. The Court therefore finds that Tawfiq's claims against Cauley are barred by sovereign immunity, and that this protection has not been waived.

Accordingly, the Court SUSTAINS Defendant's Objection Nos. 1-4 to the Magistrate Judge's R&R.

### 2.    Remand

Defendant's fifth objection contends that the R&R improperly recommends that the Court remand this matter to state court without further proceedings because Defendant Cauley has not raised a colorable federal defense. (ECF No. 15, Def.'s Obj., PageID.207-09.) The Court agrees with Defendant and sustains this objection.

Defendant Cauley removed this matter to this Court pursuant to 28 U.S.C. § 1442(a)(1), which allows removal of actions against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1); (ECF No. 1, Notice of Removal.)

Unlike a typical removal action, the federal question supporting removal under § 1442 need not be apparent from the face of the complaint. *Mesa v. California*, 489 U.S. 121, 136 (1989). Rather, a court may hold jurisdiction over an action removed under § 1442 even if the only federal question comes from a federal

defense. *Id.*. Federal officers therefore are entitled to remove a suit filed against them in state court pursuant to § 1442 if (1) they can show that the suit "relat[es] to any act under color of [their] office" and (2) they raise a colorable federal defense. 28 U.S.C. § 1442(a)(1); *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999).

A suit against a federal officer "relat[es] to any act under color of [their] office" if there is a "'causal connection' between the charged conduct and asserted official authority." *See Acker*, 527 U.S. at 431. In this case, as discussed above, Tawfiq's claims in the petition arise from Defendant Cauley's official actions, and specifically his involvement in Tawfiq's termination and enforcement of the behavioral flag. Therefore, Cauley meets this first requirement. The Magistrate Judge agreed that "[t]here is no serious dispute that Cauley is a federal officer who acted 'under color of federal office[.]'" (ECF No. 13, R&R, PageID.136.)

With respect to the "colorable defense requirement," the Supreme Court has explained:

> In construing the colorable federal defense requirement, we have rejected a "narrow, grudging interpretation" of the statute, recognizing that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." We therefore do not require the officer virtually to "win his case before he can have it removed."

*Acker*, 527 U.S. at 431 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). The Supreme Court has cautioned that the federal officer removal statute is not

"narrow" or "limited," and that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Willingham*, 395 U.S. at 406-07 (explaining that "[t]he officer need not win his case before he can have it removed.").

Here, Defendant Cauley has raised a colorable federal defense – that Tawfiq's claims are barred by sovereign immunity. As the Court explained above, Tawfiq's requested PPO could impact Cauley's, and the VA's, ability to enforce the patient flag, and impact Cauley's ability to carry out his duties in a VA facility "occupied" by Tawfiq. Because mandating remand after a federal officer successfully raises sovereign immunity would frustrate the officer's "absolute" right to have his or her federal defense decided by a federal court, the Court finds that remand here would frustrate the purpose of sovereign immunity, and the Court will therefore SUSTAIN Defendant's fifth objection, GRANT Defendant's motion for summary judgment, and DISMISS Tawfiq's complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court:

(1) **OVERRULES** Plaintiff's Objections (ECF No. 14);

(2) **SUSTAINS** Defendant's Objections (ECF No. 15);

(3) **REJECTS** Magistrate Judge Morris's August 15, 2022 Report and Recommendation (ECF No. 13);

(4)   **GRANTS** Defendant Christopher Cauley's Motion for Summary Judgment (ECF No. 6); and

(5) **DISMISSES** this case **WITHOUT PREJUDICE**.

IT IS SO ORDERED.

Dated: December 22, 2022

s/Paul D. Borman
Paul D. Borman
United States District Judge